UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------------------------------------------------- x
:
JOHN J. CARNEY, IN HIS CAPACITY AS COURT- :
APPOINTED RECEIVER FOR HIGHVIEW POINT :
PARTNERS, LLC; MICHAEL KENWOOD GROUP, LLC; MK :
MASTER INVESTMENTS LP; MK INVESTMENTS, LTD.; :
MK OIL VENTURES LLC; MICHAEL KENWOOD CAPITAL :
MANAGEMENT, LLC; MICHAEL KENWOOD ASSET :
MANAGEMENT, LLC; MK ENERGY AND :
INFRASTRUCTURE, LLC; MKEI SOLAR, LP; MK : 12 Civ. 183 (SRU)
AUTOMOTIVE, LLC; MK TECHNOLOGY, LLC; MICHAEL :
KENWOOD CONSULTING, LLC; MK INTERNATIONAL :
ADVISORY SERVICES, LLC; MKG-ATLANTIC :
INVESTMENT, LLC; MICHAEL KENWOOD NUCLEAR :
ENERGY, LLC; MYTCART, LLC; TUOL, LLC; MKCM :
MERGER SUB, LLC; MK SPECIAL OPPORTUNITY FUND; :
MK VENEZUELA, LTD.; SHORT TERM LIQUIDITY FUND, :
I, LTD., :
:
            Plaintiff, :
:
v. :
:
JUAN S. MONTES, :
: December 21, 2012
           Defendant. :
:
------------------------------------------------------------------------------- x

REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THE MOTION OF JUAN S. MONTES
TO DISMISS THE SECOND AMENDED COMPLAINT

| | |
|---|---|
| David L. Belt | Michael B. Mukasey |
| HURWITZ SAGARIN SLOSSBERG & | Matthew E. Fishbein |
| KNUFF LLC | Elliot Greenfield |
| 147 North Broad Street, P.O. Box 112 | DEBEVOISE & PLIMPTON LLP |
| Milford, Connecticut  06460 | 919 Third Avenue |
| | New York, New York  10022 |
| Eric J. Shames | |
| ERIC J. SHAMES, ESQ., P.C. | Attorneys for Juan S. Montes |
| 301 East 79th Street, Suite 32B | |
| New York, New York  10075 | |

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ............................................................................................................................ 1

I.     THE WAGONER RULE BARS THE RECEIVER'S CLAIMS. ..................................... 1

        A.     The Wagoner Rule Applies to Receivers. .............................................................. 1

        B.     The Wagoner Rule Bars the Receiver's Claims Under CUFTA. ........................... 3

        C.     The Adverse Interest Exception Does Not Apply. ................................................. 4

II.    THE RECEIVER LACKS STANDING TO BRING THE FRAUDULENT TRANSFER CLAIM BECAUSE THE RECEIVERSHIP ENTITIES ARE NOT CREDITORS. .......... 5

        A.     The Receiver Lacks Standing Because the Receivership Entities Are Not Creditors of One Another. ........................................................................................ 6

        B.     The Receiver's Allegation that the Receivership Entities Are "Tort Creditors" of Illarramendi Does Not Confer Standing on the Receiver. .................. 6

        C.     The Receivership Order Does Not Confer Standing on the Receiver to Bring Claims That the Receivership Entities Themselves Could Not Have Brought. .................................................................................................................. 6

III.   THE RECEIVER LACKS STANDING TO BRING ANY CAUSE OF ACTION RELATED TO THE PERMUTA TRANSACTIONS BECAUSE THE RECEIVERSHIP ENTITIES WERE NOT INJURED. ..................................................................................... 7

IV.   THE RECEIVER'S CLAIMS BASED ON THE PERMUTAS ARE TIME-BARRED. ... 7

V.    THE RECEIVER FAILS TO STATE A CLAIM. ............................................................ 9

        A.     The Receiver Fails to State a Claim for Aiding and Abetting Breach of Fiduciary Duty or Conspiracy to Breach Fiduciary Duty. ...................................... 9

        B.     The Receiver Fails to State a Claim for Unjust Enrichment or "Money Had and Received." ............................................................................... 10

        C.     The Receiver Fails to State a Claim for Constructive Trust or Accounting. ......... 10

CONCLUSION ....................................................................................................................... 10

## TABLE OF AUTHORITIES

CASES

AKRO Investicni Spolecnost, A.S. v. A.B. Watley, Inc.,
   No. 01 Civ. 7693, 2003 WL 1108135 (S.D.N.Y. Mar. 13, 2003) ..............................................1

Breeden v. Kirkpatrick & Lockhart, LLP,
   268 B.R. 704 (S.D.N.Y. 2001), aff'd, 336 F.3d 94 (2d Cir. 2003)..............................................5

Certain Underwriters at Lloyd's, London v. Cooperman,
   289 Conn. 383, 957 A.2d 836 (2008) ......................................................................................8

Clark v. U.S.,
   102 U.S. 322 (1880)..................................................................................................................3

Cobalt Multifamily Investors I, LLC v. Shapiro,
   No. 06 Civ. 6468, 2008 WL 833237 (S.D.N.Y. Mar. 28, 2008) ...........................................1, 2

Cobalt Multifamily Investors I, LLC v. Shapiro,
   857 F. Supp. 2d 419 (S.D.N.Y. 2012) ......................................................................................5

Conn. Ins. Guar. Ass'n v. Yocum,
   No. CV940539691S, 1996 WL 367726 (Conn. Super. June 6, 1996)......................................8

Eberhard v. Marcu,
   530 F.3d 122 (2d Cir. 2008)..............................................................................................1, 2, 7

Hirsch v. Arthur Andersen & Co.,
   72 F.3d 1085 (2d Cir. 1995).............................................................................................2, 3, 4

In re Agape World, Inc.,
   467 B.R. 556 (Bankr. E.D.N.Y. 2012)......................................................................................2

In re Bennett Funding Group, Inc.,
   336 F.3d 94 (2d Cir. 2003)....................................................................................................2, 5

In re CBI Holding Co.,
   529 F.3d 432 (2d Cir. 2008)......................................................................................................2

In re Complete Mgmt., Inc.,
   No. 02 Civ. 1736, 2003 WL 21750178 (S.D.N.Y. July 29, 2003) ...........................................4

In re Granite Partners, LP,
   194 B.R. 318 (Bankr. S.D.N.Y. 1996)......................................................................................3

In re Hampton Hotel Investors, L.P.,
   289 B.R. 563 (Bankr. S.D.N.Y. 2003)......................................................................................3

In re The Mediators, Inc.,
 105 F.3d 822 (2d Cir. 1997)...................................................................................................2, 4

In re Park South Sec., LLC,
 326 B.R. 505 (Bankr. S.D.N.Y. 2005)........................................................................................3

In re Stanwich Fin. Servs. Corp.,
 317 B.R. 224 (Bankr. D. Conn. 2004) ........................................................................................5

In re Stanwich Fin. Servs. Corp.,
 2011 WL 1331926 (Bankr. D. Conn. Apr. 7, 2011), reconsideration denied,
 2011 WL 4571986 (Bankr. D. Conn. Sep 30, 2011) ..................................................................4

In re Wedtech Corp.,
 81 B.R. 240 (S.D.N.Y. 1987).....................................................................................................4

Joslin v. Grossman,
 107 F. Supp. 2d 150 (D. Conn. 2000).........................................................................................8

Kardoh v. U.S.,
 572 F.3d 697 (9th Cir. 2009) .....................................................................................................3

Kirschner v. Grant Thornton LLP,
 No. 07 Civ. 11604, 2009 WL 1286326 (S.D.N.Y. Apr. 14, 2009),
 aff'd, Kirschner v. KPMG LLP, 626 F.3d 673 (2d Cir. 2010) ...................................................2

Macomber v. Travelers Prop. & Cas. Corp.,
 261 Conn. 620, 804 A.2d 180 (2002) ......................................................................................10

Merwin v. Huntington,
 2 Conn. 209 (1817) ....................................................................................................................3

Micari v. Mielcarek,
 No. HHBCV106006211, 2012 WL 899210 (Conn. Super. Mar. 2, 2012) ................................9

Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,
 322 F.3d 147 (2d Cir. 2003).......................................................................................................2

Picard v. HSBC Bank PLC,
 454 B.R. 25 (S.D.N.Y. 2011).....................................................................................................2

Piteo vs. Gottier,
 112 Conn. App. 441, 963 A.2d 83 (Conn. App. 2009)..............................................................8

Reider v. Arthur Andersen, LLP,
 47 Conn. Supp. 202, 784 A.2d 464 (Conn. Super. 2001) ......................................................4, 5

Ryan v. Sullivan, Hill, Lewin, Rez, Engel & LaBazzo,
    316 B.R. 101 (D. Conn. 2004) ...................................................................................... 3

Scholes v. Lehmann,
    56 F.3d 750 (7th Cir. 1995) .................................................................................... 2, 6

Watts v. Chittenden,
    301 Conn. 575, 22 A.3d 1214 (2011) ......................................................................... 9

Wight v. BankAmerica Corp.,
    219 F.3d 79 (2d Cir. 2000) ..................................................................................... 2, 4

World Wrestling Entm't, Inc. v. THQ, Inc.,
    No. X05CV065002512S, 2008 WL 4307568 (Conn. Super. Aug. 29, 2008) ........... 9

Zaist v. Olson,
    154 Conn. 563, 227 A.2d 552 (1967) ......................................................................... 6


STATUTES

11 U.S.C. § 544 .................................................................................................................. 3

12 U.S.C. § 1821(d)(14) .................................................................................................... 8

Conn. Gen. Stat. § 52-577 ................................................................................................. 8

Conn. Gen. Stat. § 552b .................................................................................................... 6

Defendant Juan S. Montes submits this reply memorandum in further support of his motion to dismiss the Second Amended Complaint (the "SAC").

PRELIMINARY STATEMENT

The Receiver's primary response to the arguments raised by Defendant is, in essence, to ask the Court to ignore or reject the law of the Second Circuit and Connecticut and instead adopt the law of other jurisdictions around the country that the Receiver believes is more favorable to his position. This Court, of course, is bound by Second Circuit and Connecticut law, following the core principle that a receiver "has no greater rights or powers than the corporation itself would have." Eberhard v. Marcu, 530 F.3d 122, 132 (2d Cir. 2008).

ARGUMENT

I.    THE WAGONER RULE BARS THE RECEIVER'S CLAIMS.

   A.    The Wagoner Rule Applies to Receivers.

The Receiver's assertion that the Wagoner rule is limited to bankruptcy trustees and does not apply to receivers is incorrect. (Opp'n 13-14.) The two courts that have addressed the issue both held that the Wagoner rule applies to receivers. In Cobalt Multifamily Investors I, LLC v. Shapiro, Judge Wood held that a receiver "occupies a position sufficiently analogous to a bankruptcy trustee as to be subject to the standing limitations set forth in Wagoner and its progeny." No. 06 Civ. 6468, 2008 WL 833237, at *3 (S.D.N.Y. Mar. 28, 2008). Likewise, in AKRO Investicni Spolecnost, A.S. v. A.B. Watley, Inc., Judge Preska applied the Wagoner rule to a receiver because, like a bankruptcy trustee, he "can stand only in the shoes of the liquidated entity." No. 01 Civ. 7693, 2003 WL 1108135, at *5, *7 (S.D.N.Y. Mar. 12, 2003). Cobalt and AKRO reflect the Second Circuit's clear statement that a receiver "may commence lawsuits, but

stands in the shoes of the corporation and can assert only those claims which the corporation could have asserted." Eberhard, 530 F.3d at 132 (internal quotation omitted).[1]

Despite acknowledging that the Wagoner rule is "exclusively a doctrine of the Second Circuit," the Receiver cites no Second Circuit case holding the Wagoner rule inapplicable to receivers and offers no substantive response to Cobalt and AKRO.[2] The Receiver instead relies on cases from other circuits, such as Scholes v. Lehmann, 56 F.3d 750 (7th Cir. 1995), that have developed law that differs sharply from the Second Circuit's Wagoner rule. (Mem. 11-12.) Notwithstanding the conflicting approaches followed elsewhere, the Second Circuit has repeatedly affirmed its commitment to the Wagoner rule.[3]

The Receiver's argument that the Court should not apply the Wagoner rule for equitable reasons ignores the fact that the Wagoner rule itself – derived from the equitable defense of in pari delicto – represents this Circuit's resolution of the equitable considerations. Wagoner "elevates in pari delicto beyond a mere defense to a claim" and deprives the Receiver of standing to bring claims that are subject to that defense. In re Agape World, Inc., 467 B.R. 556, 563 (Bankr. E.D.N.Y. 2012). The alleged payment of bribes implicates the core of the in pari delicto doctrine, which, in fact, "was originally used in the context of criminal activity to bar the return

---

[1] Courts in the Second Circuit have consistently applied Wagoner to a range of plaintiffs suing in a representative capacity who, like bankruptcy trustees, "stand in the shoes" of the entities they represent. See, e.g., In re The Mediators, Inc., 105 F.3d 822, 826 (2d Cir. 1997) (applying Wagoner rule to a creditors' committee, which "is in a position analogous to a trustee because it is suing on behalf of the debtor"); Kirschner v. Grant Thornton LLP, No. 07 Civ. 11604, 2009 WL 1286326, at *5 (S.D.N.Y. Apr. 14, 2009), judgment aff'd, Kirschner v. KPMG LLP, 626 F.3d 673 (2d Cir. 2010) (litigation trustee); Picard v. HSBC Bank PLC, 454 B.R. 25, 29-31 (S.D.N.Y. 2011) (Securities Investor Protection Act trustee).

[2] The Receiver misstates Judge Wood's opinion in Cobalt, which did not find that there was a "viable argument" that the Wagoner rule might not apply to a receiver. (Opp'n 21 n.16.) To the contrary, the court questioned that observation, which had been made by the magistrate judge. Cobalt, 2008 WL 833237, at *3 n.7.

[3] See In re CBI Holding Co., 529 F.3d 432 (2d Cir. 2008); In re Bennett Funding Group, Inc., 336 F.3d 94 (2d Cir. 2003); Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147 (2d Cir. 2003); Wight v. BankAmerica Corp., 219 F.3d 79 (2d Cir. 2000); In re The Mediators, Inc., 105 F.3d 822 (2d Cir. 1997); Hirsch v. Arthur Andersen & Co., 72 F.3d 1085 (2d Cir. 1995).

of funds used in an attempt to bribe a public official." Kardoh v. U.S., 572 F.3d 697, 700 (9th Cir. 2009).  See, e.g., Clark v. U.S., 102 U.S. 322, 331-32 (1880); Merwin v. Huntington, 2 Conn. 209 (1817).  Applying the Wagoner rule in this case would not insulate Montes from liability, as it would not affect the standing of a proper plaintiff.  See Hirsch, 72 F.3d at 1093-94 (investors and creditors were proper plaintiffs).

        B.       <u>The Wagoner Rule Bars the Receiver's Claims Under CUFTA</u>.

The Receiver's assertion that the Wagoner rule does not apply to claims under CUFTA is incorrect for two reasons.  (Opp'n 15-17.)  First, the exception cited by the Receiver extends only to representatives subject to the Bankruptcy Code.  The Wagoner rule does not bar a bankruptcy trustee from asserting "causes of action that the Bankruptcy Code specifically confers on a trustee," In re Park South Sec., LLC, 326 B.R. 505, 513 (Bankr. S.D.N.Y. 2005), such as fraudulent transfer claims under Section 544, as to which the bankruptcy trustee may "stand[] in the shoes of a hypothetical or actual creditor." In re Granite Partners, LP, 194 B.R. 318, 328 n.13 (Bankr. S.D.N.Y. 1996).  As the Receiver is not subject to the Bankruptcy Code and has no authority – statutory or otherwise – to sue on behalf of the Receivership Entities' creditors, his CUFTA claims are not excluded from the Wagoner rule.[4]

Second, even for bankruptcy trustees, the Second Circuit has made clear that in determining whether the Wagoner rule bars a particular cause of action, "the court must look to the nature of the wrongs alleged in the complaint without regard to the plaintiff's designation." In re Hampton Hotel Investors, L.P., 289 B.R. 563, 576 (Bankr. S.D.N.Y. 2003) (citation

---

[4] The Receiver's mischaracterizes Ryan v. Sullivan, Hill, Lewin, Rez, Engel & LaBazzo, 316 B.R. 101, 106-07 (D. Conn. 2004).  That cased did not involve allegations that the estate participated in wrongdoing, and the court did not address the Wagoner rule (i.e., the application of in pari delicto as a bar to standing).  (Opp'n 16.)  Ryan simply illustrates that – unlike a receiver – a bankruptcy trustee may bring fraudulent transfer claims on behalf of the bankrupt entity's creditors, based on the statutory authority of the Bankruptcy Code.

omitted).  See Hirsch, 72 F.3d at 1092 (Plaintiff's "claims of fraud, malpractice, aiding and abetting a fraud . . . , fraudulent transfer, breach of fiduciary duty, unjust enrichment, and monies had and received, allege what is essentially 'a single form of wrongdoing under different names.'") (quoting In re Wedtech Corp., 81 B.R. 240, 241 (S.D.N.Y. 1987)) (emphasis added); In re Complete Mgmt., Inc., 02 Civ. 1736, 2003 WL 21750178, at *2 (S.D.N.Y. July 29, 2003) ("[I]t makes sense that the application of a rule designed to prevent a plaintiff from recovering damages 'for a wrong that he himself essentially took part in,' would not depend on the nature of the accusations leveled against third-parties.") (quoting Wight, 219 F.3d at 87).

On this basis, the court in In re Stanwich Financial Services Corp. held that the Wagoner rule barred fraudulent transfer claims aimed at recovering payments to professionals who allegedly participated in the wrongdoing.  No. 01-50831, 2011 WL 1331926, at *1-3 (Bankr. D. Conn. Apr. 7, 2011), reconsideration denied, 2011 WL 4571986 (Bankr. D. Conn. Sep 30, 2011). Here, the Receiver misapplies the label of "fraudulent transfer" in seeking to recover alleged bribe payments.  It is this same alleged conduct that underlies all of the Receiver's other claims.

       C.       The Adverse Interest Exception Does Not Apply.

The "adverse interest" exception to the Wagoner rule does not apply to this action for several reasons.  To start, the exception "applies 'only when the agent has 'totally abandoned' the principal's interests.'"  Stanwich, 2011 WL 4571986 at *3 (quoting Mediators, 105 F.3d at 827).  The SAC makes clear that the Receivership Entities profited from the Permuta transactions.  (Mem. 21-23.)  See Reider v. Arthur Andersen, LLP, 47 Conn. Supp. 202, 211, 784 A.2d 464, 476 (Conn. Super. 2001) (Exception does not apply where wrongdoing "somehow benefits the corporation," such as where conduct "increased [the corporation's] assets even as it enriched [the wrongdoer].") (emphasis added).  Because the conduct at issue in the Wagoner rule

4

analysis here is the alleged payment of bribes, allegations that Illarramendi injured the Receivership Entities by operating a Ponzi scheme and looting are not relevant. (Opp'n 22.)

Even if the allegations supported the "adverse interest" exception, its application would nevertheless be barred by the "sole actor" rule, which applies "where the corporation bestows upon its agent <u>unfettered control</u> and allows the agent to operate <u>without meaningful supervision</u> with respect to a particular type of transaction." <u>Breeden v. Kirkpatrick & Lockhart, LLP</u>, 268 B.R. 704, 709 (S.D.N.Y. 2001), <u>aff'd</u>, 336 F.3d 94 (2d Cir. 2003) (emphasis added); <u>Reider</u>, 47 Conn. Supp. at 213-214, 784 A.2d at 472 (endorsing the "sole actor" rule).[5] The Receiver admits that Illarramendi enjoyed unfettered control over the Receivership Entities and unilaterally caused them to engage in the transactions at issue. (SAC ¶¶ 26, 35, 47, 64, 119, 137.)

Furthermore, the "sole actor" rule bars application of the "adverse interest" rule because the Receiver does not allege an "innocent insider" who "had the authority to stop the fraud and would have done so had they known about it." <u>Cobalt Multifamily Investors I, LLC, v. Shapiro</u>, 857 F. Supp. 2d 419, 431 n.7 (S.D.N.Y. 2012) (applying Connecticut law; citing <u>Reider</u>, 784 A.2d at 472); <u>Bennett Funding</u>, 336 F.3d at 101 (alleged "innocent insider" must have had authority to stop wrongdoing).

II. <u>THE RECEIVER LACKS STANDING TO BRING THE FRAUDULENT TRANSFER CLAIM BECAUSE THE RECEIVERSHIP ENTITIES ARE NOT CREDITORS</u>.

The Receiver lacks standing under CUFTA to recover payments the Receivership Entities allegedly made to Montes because only <u>creditors</u> of the Receivership Entities have standing to sue – not the Receivership Entities themselves. The Receiver's attempts to circumvent this core requirement are unavailing.

---

[5]  The <u>Reider</u> court ultimately did not impute wrongdoing to insurance company, a holding that was "dependent upon that fact that the insurance commissioner was specifically empowered under state statutes and regulations to control insurance companies." <u>In re Stanwich Fin. Servs. Corp.</u>, 317 B.R. 224, 229 (Bankr. D. Conn. 2004).

5

      A.      <u>The Receiver Lacks Standing Because the Receivership Entities Are Not Creditors of One Another</u>.

The Receiver's assertion that the Receivership Entities are their own creditors because Illarramendi "routinely commingled funds between and among" them ignores that fact that alter ego entities have no separate corporate identity and cannot be creditors of one another. The Receiver ignores the Connecticut Supreme Court's holding in <u>Zaist v. Olson</u> that "obligations incurred" in transactions between alter ego entities are to be "disregarded." 154 Conn. 563, 573-74, 227 A.2d 552, 557 (1967) (citing cases). Instead, the Receiver relies solely on the Seventh Circuit's <u>Scholes</u> opinion, which is irrelevant to this issue of Connecticut law. (Opp'n 26-27.)

      B.      <u>The Receiver's Allegation that the Receivership Entities Are "Tort Creditors" of Illarramendi Does Not Confer Standing on the Receiver</u>.

The Receiver's newly-added theory that the Receivership Entities have standing as "tort creditors" of Illarramendi (the so-called "tort debtor") is unsupported by any Connecticut cases and disregards the plain language of CUFTA. (Opp'n 24-26 & n.18.) The Receiver acknowledges that there is no Connecticut authority for his "tort creditor" theory. (Opp'n 26 n.19.) In any event, the Receiver offers no response to the plain language of CUFTA, which unambiguously grants a creditor standing to recover only property of the debtor/transferor – <u>not the creditor's own property</u>. Conn. Gen. Stat. § 552b(2) ("'Asset' means property of a debtor."). The SAC and Opposition leave no doubt that the alleged Payments were transfers of "property of the Receivership Entities." (SAC ¶ 119; Opp'n 3, 26.)

      C.      <u>The Receivership Order Does Not Confer Standing on the Receiver to Bring Claims That the Receivership Entities Themselves Could Not Have Brought</u>.

The Receivership Order does not confer standing on the Receiver to assert fraudulent transfer claims – or any other cause of action – where the Receiver otherwise lacks standing under state or federal law. To the contrary, the Order expressly <u>limits</u> the Receiver's ability to

6

bring legal actions to those that are "for the benefit and on behalf of the Receivership Estate." (Am. Receivership Order ¶¶ 14, 48.) Nothing in the Order allows the Receiver to assert claims on behalf of the Receivership Entities' creditors. See Eberhard, 530 F.3d at 132.

III. THE RECEIVER LACKS STANDING TO BRING ANY CAUSE OF ACTION RELATED TO THE PERMUTA TRANSACTIONS BECAUSE THE RECEIVERSHIP ENTITIES WERE NOT INJURED.

The Receiver cannot credibly contest the fact that the Receivership Entities made millions of dollars in profit from the Permuta transactions. (Mem. 21-23.) That the Receivership Entities profited is not, as the Receiver suggests, an "interpretation of the facts" or an "alternative theory" (Opp'n 9); it is a matter of arithmetic. (Mem. 22.) It makes no difference that the Receiver chose to delete the word "profit" from the SAC. (Id. 21.)

The Receiver's response to this fact is to conflate the Permutas – which are not alleged to have been made "in exchange for access to new investment capital" – with the Harewood transaction, which is alleged to have included an investment by PDVSA in one of the Receivership Entities. (Opp'n 10-12 (referring to the "Fraudulent Payments").) The Permutas are not alleged to have exposed the Receivership Entities to "increased creditor liability" or to have "deepened their insolvency." (Id. 10-13; SAC ¶¶ 55, 66-96.) None of the cases cited by the Receiver supports the idea that a corporation is harmed by a profitable transaction.

IV. THE RECEIVER'S CLAIMS BASED ON THE PERMUTAS ARE TIME-BARRED.

The Receiver's CUFTA claim, which is based entirely on the Permutas, is time-barred because the Receiver commenced this action more than four years after the Payments were allegedly made and more than one year after the Payments were known to the Receivership Entities. There is no basis under Connecticut law for the Receiver's assertion that, upon appointment, he is entitled to a fresh discovery period. (Opp'n 27.) Notably, the Receiver cites only to cases that apply the laws of New York, Texas, Utah, and North Carolina and that are

7

based on the doctrine of "adverse domination," which the Receiver acknowledges Connecticut has not recognized. (Opp'n 28-29 & n.21.) Joslin v. Grossman, also cited by the Receiver, is inapposite as it concerned an FDIC receiver and the limitations period was governed by a federal statute. 107 F. Supp. 2d 150, 154-55 (D. Conn. 2000) (citing 12 U.S.C. § 1821(d)(14)).[6]

The remaining claims are all governed by a three-year limitations period. Conn. Gen. Stat. § 52-577. (Mem. 23-24.) They cannot be based on the Permutas, as to which the statute of repose extinguished all liability three years after the alleged Payments. (See supra n.6.)

To avoid the three-year limitations period for unjust enrichment, the Receiver contends: that the limitations period is six years; that it is four years plus a one-year discovery period; or it is three years but should be ignored. (Opp'n 35-36.) First, as in the cases cited by the Receiver, the limitations period is six years only when the action sounds in contract rather than tort. (Mem. 23-24.) Second, no Connecticut court has held that unjust enrichment is subject to a discovery rule. Third, because the "legal claims are barred," the "equitable claims based on the same facts also are time barred." Certain Underwriters at Lloyd's, London v. Cooperman, 289 Conn. 383, 411, 957 A.2d 836, 852 (2008). (Mem. 24.) The limitations period for "money had and received" is the same as that for unjust enrichment. (Opp'n 37; Mem. 25.)

The Receiver seeks to avoid the three-year limitations period for fiduciary duty claims by invoking the "continuing course of conduct" doctrine (Opp'n 31-32), but for that doctrine to

---

[6] Nor is there reason to think Connecticut would adopt a rule allowing receivers to revive extinguished claims, as torts claims in Connecticut are governed by a statute of repose, not a statute of limitations. A statute of repose "sets a fixed limit after which the tortfeasor will not be held liable and in some cases will serve to bar an action before it accrues." Piteo vs. Gottier, 112 Conn. App. 441, 445, 963 A.2d 83, 86 (Conn. App. 2009) (internal quotation marks omitted). The limitations period "begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." Id. Unlike a statute of limitations, a statute of repose "operates to cut off all liability . . . regardless of when the claim arose, who knew or had reason to know about it, or any other factor traditionally associated with a statute of limitations." Conn. Ins. Guar. Ass'n v. Yocum, No. CV940539691S, 1996 WL 367726, at *6 (Conn. Super. June 6, 1996). To allow an extinguished claim to be revived because a receiver is later appointed would directly contravene the Connecticut legislature's imposition of a statute of repose.

apply "the defendant must have . . . <u>owed a continuing duty to the plaintiff</u> that was related to the original wrong, and [] continually breached that duty." <u>World Wrestling Entm't, Inc. v. THQ, Inc.</u>, 2008 WL 4307568, at *12 (Conn. Super. Aug. 29, 2008) (emphasis added). It plainly does not apply here, as there is no allegation that Montes owed a fiduciary duty to the Receivership Entities.[7] In the absence of a duty, the statute of repose extinguishes liability after three years.

V. <u>THE RECEIVER FAILS TO STATE A CLAIM</u>.

    A. <u>The Receiver Fails to State a Claim for Aiding and Abetting Breach of Fiduciary Duty or Conspiracy to Breach Fiduciary Duty</u>.

The Receiver fails to allege facts supporting a plausible inference that Montes knew that Illarramendi's alleged conduct related to the alleged bribe payments constituted a breach a fiduciary duty to the Receivership Entities, much less that he substantially assisted the breach or acted with a shared goal of committing the alleged breach. (Mem. 29-30; Opp'n 32-35.)[8]

Setting aside the SAC's many conclusory assertions, the Receiver alleges that Montes (<u>i</u>) received bribes indirectly in connection with the Permutas and (<u>ii</u>) was promised, but did not receive, a bribe in connection with the Harewood transaction. (SAC ¶¶ 75, 86, 93, 94, 102.) Even taking into account the time-barred allegations relating to the Permutas:

- the SAC lacks factual allegations supporting a plausible inference that Montes knew about Illarramendi's relationship with the various Receivership Entities, or what fiduciary duties Illarramendi might owe to them;

- the allegation that Montes received the Payments indirectly through Beracha undermines any inference that Montes knew whether the alleged Payments even came from the Receivership Entities, as opposed to Illarramendi himself (SAC ¶¶ 75, 86, 93, 94); and

---

[7] The only exception to the duty requirement is for "intentional infliction of emotional distress." <u>Micari v. Mielcarek</u>, No. HHBCV106006211, 2012 WL 899210, at *3 n.2 (Conn. Super. Mar. 2, 2012) (citing <u>Watts v. Chittenden</u>, 301 Conn. 575, 595-96, 22 A.3d 1214, 1226 (2011)).

[8] The Receiver's statement that Montes would be liable if he knew that "paying bribes was improper or illegal" is incorrect; the required knowledge is of a breach of fiduciary duty. (Opp'n 34.) Likewise, the allegation that Montes "knew or should have known" that Illarramendi was not operating a "legitimate hedge fund" are irrelevant, as Illarramendi's operation of a Ponzi scheme is not the breach at issue. (<u>Id.</u> 7.)

9

- the alleged use of fictional email addresses created by Illarramendi is entirely consistent with allegations of bribes and does not indicate that Montes had knowledge of any breach by Illarramendi of his fiduciary duties (SAC ¶¶ 62, 104).

Notably, a thorough search reveals no reported cases – in any state or federal court – in which a bribe <u>recipient</u> was found to have aided and abetted a bribe payer's breach of fiduciary duty, or to have conspired to breach that duty.

### B. The Receiver Fails to State a Claim for Unjust Enrichment or "Money Had and Received."

The only timely conduct – the Harewood transaction – is plainly insufficient to sustain the claims of unjust enrichment and "money had and received" because the Receiver does not allege that Montes actually received any payment. The Receiver cannot rely on unknown facts that might possibly come to light in the future. (Mem. 30-31; Opp'n 37.) The "money had and received" claim also fails because the Receiver alleges that any payments were gratuitous and not mistakenly made. (Mem. 31.)

### C. The Receiver Fails to State a Claim for Constructive Trust or Accounting.

Since the Connecticut Supreme Court's statement that constructive trust and accounting are not causes of action, <u>Macomber v. Travelers Prop. & Cas. Corp.</u>, 261 Conn. 620, 623 n.3, 804 A.2d 180, 185 n.3 (2002), most Connecticut courts have dismissed such "claims." (Mem. 32.) These remedies for the Receiver's deficient unjust enrichment claim should be denied.

### CONCLUSION

For the foregoing reasons, the SAC should be dismissed with prejudice as against defendant Juan S. Montes.

By : ___/s/ Matthew E. Fishbein___

Michael B. Mukasey
Matthew E. Fishbein
Elliot Greenfield
DEBEVOISE & PLIMPTON LLP

10

919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000
Fax: (212) 909-6836

Eric J. Shames
ERIC J. SHAMES, ESQ., P.C.
301 East 79th Street, Suite 32B
New York, NY 10075
Tel: (917) 742-3104
Fax: (212) 933-1433

David L. Belt
HURWITZ SAGARIN SLOSSBERG & KNUFF LLC
147 North Broad Street, P.O. Box 112
Milford, Connecticut 06460
Tel: (203) 877-8000
Fax: (203) 878-9800
Attorneys for defendant Juan S. Montes

<u>Certificate of Service</u>

  This is to certify that on December 21, 2012 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to all parties that are unable to accept electronic filing.  Parties may access this filing through the Court's electronic system.

               /s/ Elliot Greenfield
               Elliot Greenfield